IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| VISHWAJETH BHOOPALAM,<br><br>      Plaintiff,<br><br>v.<br><br>CARDIOVASCULAR CLINIC OF NEBRASKA, LLC d/b/a PIONEER HEART INSTITUTE and CCN MOBILE SERVICES, LLC,<br><br>      Defendants. | Case No.<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff Vishwajeth Bhoopalam, for his claims against Defendants Cardiovascular Clinic of Nebraska, LLC d/b/a Pioneer Heart Institute ("CCN") and CCN Mobile Services, LLC ("CCN Mobile"), alleges and states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Vishwajeth Bhoopalam ("Bhoopalam") is an individual that resides in Lancaster County, Nebraska.

2. Defendant CCN is a Nebraska limited liability company with its principal place of business in Lancaster County, Nebraska, and its members reside in Nebraska.

3. Defendant CCN Mobile is a Nebraska limited liability company with its principal place of business in Lancaster County, Nebraska, and its members reside in Nebraska.

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action arises under the Constitution, laws, or treaties of the United States.

5. This Court has supplemental jurisdiction over Bhoopalam's state law claim pursuant to 28 U.S.C. § 1367(a) because Bhoopalam's state and federal law claims share a common nucleus of operative facts.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1367(b) because a substantial part of the conduct giving rise to the claims contained herein occurred within this district.

## ADMINISTRATIVE PROCEEDINGS

7. Bhoopalam dual-filed two Charges of Discrimination with the Nebraska Equal Opportunity Commission ("NEOC") and the U.S. Equal Employment Opportunity Commission ("EEOC"): (1) NEB 2-22/23-10-53043-RS / 32E-2023-00044, filed on October 26, 2022 (the "First Charge"); and (2) NEB 2-22/23-3-53310-RS / 32E-2023-00279, filed on March 6, 2023 (the "Second Charge," and collectively, the "Charges").

8. In the First Charge, Bhoopalam asserted he was terminated due to his disability, record of disability, and in retaliation for requesting reasonable accommodations and raising bona fide concerns about perceived discrimination against him.

9. In the Second Charge, Bhoopalam asserted that he was subjected to unfavorable terms and conditions due to his disability, record of disability, and in retaliation for filing the First Charge.

10. Bhoopalam filed the Charges within 300 days from CCN's last act of discrimination, respectively, and thus both Charges were timely filed.

11. On June 30, 2023, Bhoopalam received his Notice of Right to Sue from the NEOC (the "NEOC Right to Sue"), and on August 7, 2023, Bhoopalam received his Notice of Right to Sue from the EEOC (the "EEOC Right to Sue," and collectively with the NEOC Right to Sue, the "Right to Sue Notices").

12. Bhoopalam has exhausted the administrative prerequisites to filing this lawsuit.

13. Bhoopalam has timely filed this lawsuit in accordance with applicable laws and regulations, as well as the Right to Sue Notices.

## FACTUAL BACKGROUND

### **Bhoopalam is a Qualified Individual Living with a Disability**

14. Bhoopalam is an accomplished physician and specialist who has at all relevant times been able to fulfill the essential job functions of his role as an interventional cardiologist, with or without a reasonable accommodation.

15. Bhoopalam battled cancer and related disabilities starting in 2007, which forced him to step away from his practice as a cardiologist for a significant period of time.

16. CCN and CCN Mobile knew of Bhoopalam's battle with cancer.

17. One of the cancer treatments Bhoopalam underwent involved excision and radiation of Bhoopalam's gastrointestinal tract, leaving Bhoopalam with lasting effects, including neuropathy in the legs and hands, gastrointestinal irregularities, back disease, and lower back issues, (each, an "Impairment" and collectively, the "Impairments") which substantially limit Bhoopalam's major life activities.

18. CCN and CCN Mobile knew of Bhoopalam's Impairments, as evidenced by their conduct and initial agreements to accommodate said impairments, which were later rescinded without reason or justification.

### **The Nature of the Relationship between CCN and Bhoopalam is that of an Employer and Employee**

19. As an employer, CCN held the authority to hire and fire Bhoopalam, and to set the rules and regulations of his employment.

20. As an employer, CCN held and abused the power to set the rules and regulations of Bhoopalam's work, and ultimately terminated his employment.

21. As an employer, CCN supervised, controlled, and dictated Bhoopalam's work heavily, both in practice and in the form the July 1, 2018, Employment Agreement between

Bhoopalam and CCN (the "Employment Agreement"), which spelled out the terms, conditions, and parameters of his work.

22. As an employee, Bhoopalam reported to the managing partner and executive committee of CCN.

23. As an employee, Bhoopalam had no influence on CCN and its decision-making. For example, his compensation and hours were adjusted without his input, and his former title of managing partner was unilaterally removed by his employer.

24. Under the Employment Agreement at Exhibit B, Section 4, Bhoopalam was eligible to receive a "Discretionary Bonus" based on "extraordinary performance or other factors, but the payment of such bonuses is at the full discretion of CCN," further evidencing the control CCN exercised over Bhoopalam's opportunities for compensation or participation profits or losses.

25. Between 2019 and 2020, CCN drastically reduced the number of Bhoopalam's patients, thereby exercising control over his ability to practice medicine and treat his patients.

26. Bhoopalam and CCN clearly intended that Bhoopalam work for CCN as an employee from the date of his Employment Agreement until the date his employment was terminated.

**Bhoopalam's Employment at CCN**

27. After a period of absence due to his disabilities, Bhoopalam returned to the practice of medicine in 2014 on a part-time basis with a hospital in Lincoln, Nebraska.

28. Thereafter, Bhoopalam began to develop a plan to establish an independent cardiology practice, which would eventually become CCN, and in so doing, invested significant amounts of his own time, energy, and resources, which his future partners at CCN did not do.

29. Bhoopalam left his former employer, along with several other physicians, to form

CCN.

30. Bhoopalam entered into an Operating Agreement, as a minority member, with CCN on February 20, 2018 (the "CCN Operating Agreement"), and he entered into a separate Operating Agreement, as a minority member, with CCN Mobile on September 10, 2018 (the "CCN Mobile Operating Agreement," and collectively with the CCN Operating Agreement, the "Operating Agreements").

31. In addition to investing monetarily in CCN and CCN Mobile, Bhoopalam also gave of his time, money, and expertise in a way that has provided an enormous value to CCN and CCN Mobile. Bhoopalam contributed significantly more than his partners in the form of time, effort, and resources to the formation of CCN and CCN Mobile.

32. Bhoopalam spent a significant amount of time setting up the infrastructure and components of both organizations from concept to operations including, but not limited to: evaluation, financing, hospital contracts, legal considerations, insurance contracts, human resources, equipment purchase, real estate, and electronic medical records systems.

33. Once CCN was formed, Bhoopalam worked on a reduced clinical schedule, mirroring his disability accommodations during his employment with his former employer.

34. The Employment Agreement with CCN provided at Exhibit A, Section 1, that Bhoopalam would be expected to perform 70% clinical duties, in addition to administrative and management duties "all upon less than a full-time basis and in such manner **as is necessary to accommodate Physician's disability**." (emphasis added).

35. Bhoopalam was not expected to commit to the physical and mental stress of managing CCN and CCN Mobile's day-to-day operations, on top of the same workload as other full-time physicians not carrying such administrative burdens.

36. Bhoopalam was an employee of CCN until January 25, 2022, and a minority member of CCN until December 6, 2022.

37. Bhoopalam was a minority member of CCN Mobile until December 6, 2022.

### **Discriminatory, Retaliatory, and Oppressive Conduct**

38. On June 18, 2019, CCN notified Bhoopalam that, effective July 1, 2019, it would be reducing Bhoopalam's monthly salary payments, working days, and working hours, unilaterally, without Bhoopalam's consent, in direct violation of the Employment Agreement, which provides at Exhibit B, Section 1: "CCN may amend the Salary upon one hundred twenty (120) days [sic] prior notice to Physician, provided, however, that if Physician is a Member of CCN, there shall be no adjustment to Physician's Salary unless a similar adjustment is being made for all the other Members of CCN."

39. Bhoopalam only received 13 days' notice of the reduction in his salary, and such reduction was not the result of a similar adjustment being made to similarly situated individuals.

40. In 2021, CCN and CCN Mobile proposed amending the Operating Agreements to change shareholder eligibility, such that non-full-time employees would lose partnership status. This change would have only applied to Bhoopalam and would have been in direct contravention of his Employment Agreement.

41. CCN and CCN Mobile also proposed amending CCN's Operating Agreement such that the purchase price of units upon termination will be based on a look-back valuation of CCN and CCN Mobile, as opposed to fair market value, which would have been materially detrimental to Bhoopalam had his partnership been terminated under the proposed amended Operating Agreement.

42. On February 26, 2021, Bhoopalam objected, in writing, to the proposed amendments described above.

43. Despite that objection, the proposed amendment described above passed and went into effect.

44. On July 6, 2021, Bhoopalam hand-delivered a letter to CCN's and CCN Mobile's members, notifying them that he believed the amendment was discriminatory and that he believed CCN and CCN Mobile had engaged in violations of Stark Law and the Anti-Kickback statute. More specifically, the letter detailed:

   a. The CCN and CCN Mobile members' open discussion in meetings and group emails advocating for Bhoopalam's removal from the partnership, without legitimate justification or reasoning;

   b. The CCN and CCN Mobile members discouraging Bhoopalam from attending shareholder meetings where his employment was to be discussed;

   c. The CCN and CCN Mobile members wrongful and unjustified interference with Bhoopalam's contractual relations by routing patients away from him and toward other providers, resulting in a loss of patient traffic to Bhoopalam;

   d. The CCN and CCN Mobile members ongoing hostile work environment, despite assurances from the CCN's CEO that harassment and discriminatory behavior would stop;

   e. The CCN and CCN Mobile members reductions in Bhoopalam's salary beginning in 2019, despite his continued full-time efforts, split between time-consuming medical practice and administrative duties;

    f.    The CCN and CCN Mobile members removal of Bhoopalam from his position as managing partner, despite his legitimate qualifications and abilities to perform the job;

    g.    The CCN and CCN Mobile members amending the Operating Agreements as described above.

45.    On October 6, 2021, after receipt of the letter described above, CCN and CCN Mobile rescinded the amendments to the Operating Agreements and simultaneously served notice to terminate Bhoopalam's employment.

46.    On January 25, 2022, Bhoopalam's employment with CCN terminated, but his membership in CCN and CCN Mobile continued.  During this time, Bhoopalam assisted in good faith with CCN and CCN Mobile's attempts to find a purchaser to acquire CCN and CCN Mobile. Also during this time, Bhoopalam prepared his First Charge as a result of CCN and CCN Mobile's discrimination and retaliation against him.

47.    Bhoopalam filed the First Charge on or about October 26, 2022.

48.    On information and belief, CCN and CCN Mobile received the First Charge on or about October 31, 2022.

49.    On November 7, 2022, days after receiving the First Charge, and in retaliation for exercising his rights, CCN and CCN Mobile denied him access to company records, to which he was lawfully entitled to access as a member.

50.    Shortly thereafter, on or around November 23, 2022, in further response to Bhoopalam's charge of discrimination, and in retaliation for exercising his rights, CCN and CCN Mobile issued an email calling a special meeting to be held December 6, 2022, for the express purpose of voting him out from the company and ending his status as a member.

51. On December 6, 2022, Bhoopalam's status as a member of CCN and CCN Mobile was terminated.

52. CCN and CCN Mobile attempted to purchase Bhoopalam's interest from Bhoopalam at a significantly reduced rate not reflective of the fair market value of CCN or CCN Mobile, contrary to the plain terms and conditions of the Operating Agreements.

53. CCN and CCN Mobile repeatedly refused to provide to access records to which Bhoopalam is entitled pursuant to Neb. Rev. Stat. § 21-129.

**FIRST CAUSE OF ACTION – Against CCN**
**(Violation of Nebraska Fair Employment Practice Act)**

54. Bhoopalam incorporates each and every allegation set forth in the preceding paragraphs, as if fully set forth herein.

55. CCN is an employer as defined by Neb. Rev. Stat. §48-1102(2).

56. Bhoopalam was an employee of CCN as defined by Neb. Rev. Stat. §48-1102(7).

57. Bhoopalam is a "qualified individual with a disability" as defined by Neb. Rev. Stat. §48-1102(10)(a).

58. Bhoopalam is otherwise qualified, with or without reasonable accommodation, to perform the essential functions of the employment position he held with CCN.

59. From about February of 2019 until December 6, 2022, CCN engaged in a pattern of discrimination and harassment directed at Bhoopalam in violation of the Nebraska Fair Employment Practice Act by failing to accommodate Bhoopalam in the workplace.

60. During the aforementioned period, CCN discriminated against and harassed Bhoopalam in violation of Neb. Rev. Stat. §48-1104(1) by changing the terms and conditions of his employment, including by reducing his compensation and hours, revoking his title of managing partner, proposing an amendment that would force him out as shareholder and require him to sell

9

his shares at a fraction of what he was entitled to prior to such amendment, and ultimately terminating his employment because of his disability.

61. In addition, CCN took adverse action against Bhoopalam in retaliation for the First Charge filed by Bhoopalam with the EEOC and NEOC.

62. As a result of the aforementioned harassment, hostile work environment, discriminatory termination, and retaliation Bhoopalam suffered mental and emotional distress, monetary damages, and other general and specific damages which may be proven at trial.

### SECOND CAUSE OF ACTION – Against CCN
### (Violation of Americans with Disabilities Act, as Amended)

63. Bhoopalam incorporates each and every allegation set forth in the preceding paragraphs, as if fully set forth herein.

64. CCN is an employer as defined by 42 U.S.C. § 12111(5)(A).

65. Bhoopalam was an employee of CCN as defined by 42 U.S.C. § 12111(4).

66. Bhoopalam is a "qualified individual with a disability" as defined by 42 U.S.C. §12111(8).

67. Bhoopalam is otherwise qualified, with or without reasonable accommodation, to perform the essential functions of the employment position he held with CCN.

68. From about February of 2019 until December 6, 2022, CCN engaged in a pattern of discrimination and harassment directed at Bhoopalam in violation of the Americans with Disabilities Act by failing to accommodate Bhoopalam in the workplace.

69. During the aforementioned period, CCN discriminated against and harassed Bhoopalam in violation of 42 U.S.C. § 12112(a) by changing the terms and conditions of his employment, including by reducing his compensation and hours, revoking his title of managing partner, proposing an amendment that would force him out as shareholder and require him to sell

his shares at a fraction of what he was entitled to prior to such amendment, and ultimately terminating his employment because of his disability.

70. In addition, CCN took adverse action against Bhoopalam in retaliation for the First Charge filed by Bhoopalam with the EEOC and NEOC.

71. As a result of the aforementioned harassment, hostile work environment, discriminatory termination, and retaliation, Bhoopalam suffered mental and emotional distress, monetary damages, and other general and specific damages which may be proven at trial.

### THIRD CAUSE OF ACTION – Against CCN
### (Breach of Contract – Employment Agreement)

72. Bhoopalam incorporates each and every allegation set forth in the preceding paragraphs, as if fully set forth herein.

73. Bhoopalam entered into a valid Employment Agreement with CCN.

74. The Employment Agreement provided that Bhoopalam's salary compensation was to be adjusted only if a similar adjustment was made for all the other members of CCN, or upon Bhoopalam's voluntarily agreement to the adjustment.

75. Pursuant to the Employment Agreement at Exhibit A, Section 1, any compensation adjustments were only to be made following 120 days' notice.

76. On or around June 19, 2019, CCN unilaterally changed the terms and conditions of Bhoopalam's employment such that his hours and compensation were reduced by one-third, which reduction was to take effect on July 1, 2019.

77. The compensation of the other CCN members was not adjusted.

78. Accordingly, Bhoopalam was given only 13 days' notice of the reduction in his hours and compensation.

79. CCN breached the Employment Agreement by (1) adjusting Bhoopalam's

compensation without similar adjustment to all other members of CCN; and (2) failing to give Bhoopalam adequate notice of the adjustment.

80. Bhoopalam was damaged by CCN's breaches of contract in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION – Against CCN and CCN Mobile**
**(Breach of Contract – Operating Agreements)**

81. Bhoopalam incorporates each and every allegation set forth in the preceding paragraphs, as if fully set forth herein.

82. The CCN Operating Agreement is a valid and enforceable agreement between Bhoopalam and the other members of CCN.

83. The CCN Mobile Operating Agreement is a valid and enforceable agreement between Bhoopalam and the other members of CCN Mobile.

84. The CCN Operating Agreement provides that, upon termination of membership, the member is entitled to compensation based upon the "fair market value" of CCN.

85. The CCN Mobile Operating Agreement provides that, upon termination of membership, the member is entitled to compensation based upon the "fair market value" of CCN Mobile.

86. CCN breached the CCN Operating Agreement when, upon terminating Bhoopalam's interest in CCN, it attempted to repurchase Bhoopalam's interest based upon a less-than-fair-market valuation of CCN, and has not paid Bhoopalam what he is legally owed under the CCN Operating Agreement.

87. CCN Mobile breached the CCN Mobile Operating Agreement when, upon terminating Bhoopalam's interest in CCN Mobile, it attempted to repurchase Bhoopalam's interest based upon a less-than-fair-market valuation of CCN, and has not paid Bhoopalam was he is

legally owed under the CCN Mobile Operating Agreement.

88.  Bhoopalam was damaged by CCN's and CCN Mobile's breaches of contract in an amount to be proven at trial.

### FIFTH CAUSE OF ACTION – Against CCN and CCN Mobile
### (Minority Member Oppression)

89.  Bhoopalam incorporates each and every allegation set forth in the preceding paragraphs, as if fully set forth herein.

90.  The members of CCN and CCN Mobile have engaged in minority member oppression against Bhoopalam.

91.  Bhoopalam had a reasonable and justified expectation that his employment and member status would not be altered in contravention of the Employment Agreement or Operating Agreements.

92.  Bhoopalam expected to receive proper notice regarding any adjustments to his hours and compensation.

93.  Bhoopalam expected that his employment would include limited clinical duties, while including additional administrative duties, as outlined in his Employment Agreement.

94.  Bhoopalam expected to have access to certain CCN documents that he was entitled to, and that such access would not be denied while he was still a member of CCN and CCN Mobile, or thereafter.

95.  Bhoopalam expected to attend member meetings, and that he would not be discouraged from doing so by CCN and CCN Mobile members.

96.  Bhoopalam expected to continue to see patients, and that patients would not be routed away from him and toward other physicians.

97.  Bhoopalam expected to be able to fully carry out his duties without facing

discrimination and harassment on the basis of his disabilities.

98. Bhoopalam expected to be fairly compensated for his interests in CCN and CCN Mobile in the event of a separation of his partnership, in accordance with the terms of the Operating Agreements.

99. Bhoopalam's aforementioned expectations were thwarted by the oppressive conduct of CCN and CCN Mobile's majority members.

100. CCN and CCN Mobile engaged in burdensome, harsh, and wrongful conduct, which are a visible departure from the standards of fair dealing and in violation of fair play which every member with an interest in a limited liability company is entitled to.

101. Bhoopalam was damaged by CCN and CCN Mobile's minority member oppression in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Bhoopalam seeks to recover all monetary, general, special, compensatory, punitive, attorneys' fees, costs, interest, and other damages, as well as equitable relief, and for such other and further relief as the Court deems appropriate.

## JURY DEMAND

Bhoopalam hereby demands a jury trial on all issues and causes triable to a jury.

Dated: September 25, 2023.

                                Vishwajeth Bhoopalam, Plaintiff,

                             By: */s/ Erin E. Schroeder*
                                John P. Barrett, #27544
                                Erin E. Schroeder, #26391
                                KOLEY JESSEN P.C., L.L.O.
                                One Pacific Place, Suite 800
                                1125 South 103rd Street
                                Omaha, NE  68124-1079
                                (402) 390-9500
                                (402) 390-9005 (facsimile)
                                John.Barrett@koleyjessen.com
                                Erin.Schroeder@koleyjessen.com
                                *Attorneys for Plaintiff.*